

**MEISTER SEELIG & FEIN LLP**

ATTORNEYS AT LAW
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile  (212) 655-3535
www.meisterseelig.com

Jeffrey P. Weingart
Partner
Direct:  (212) 655-3516
Fax:  (212) 655-3535
jpw@msf-law.com

January 9, 2015

**Via ECF and Electronic Mail**

Honorable Richard J. Sullivan
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
*sullivannysdchambers@nysd.uscourts.gov*

   Re: *Next Communications, Inc. and NxtGn, Inc. v. Viber Media, Inc.*
      1:14-cv-08190-RJS

Dear Judge Sullivan:

  We represent Defendant Viber Media S.à r.l., formerly known as Viber Media, Inc., ("Viber") in the above-referenced action. Pursuant to Paragraph 2(A) of your Honor's Individual Practices, we respectfully request a pre-motion conference seeking leave to file a pre-answer motion to dismiss the Complaint filed by Plaintiffs Next Communications, Inc. and NxtGn, Inc. (collectively, "Next"), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

  Founded in 2010, Viber is a well-known, pioneering provider of Voice-over-Internet Protocol-based services. Viber's app allows Viber users around the world to call other Viber users and exchange texts, photos and videos free of charge. Viber currently has over 360 million users in over 193 countries. In 2014, Viber was purchased by Japan-based Rakuten Inc. ("Rakuten"), and Viber continues to operate as a wholly-owned subsidiary of Rakuten.

  In its Complaint (Dkt. #1), Next has asserted three causes of action against Viber: (i) Breach of Contract; (ii) Misappropriation of Trade Secrets; and (iii) Misappropriation of a Business Idea. As discussed below, none of these counts are pled with the specificity required to support a valid cause of action. Indeed, the Complaint does nothing more than make conclusory statements, on information and belief, about unspecified proprietary information that Viber supposedly used and disclosed, including commonly known "ideas" such as broadcasting musical performances to wireless devices in high-definition video. (*See* Complaint ¶¶ 17, 18). Such threadbare, speculative claims do not suffice as properly pled causes of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly et al.*, 550 U.S. 544, 555 (2007). Therefore, each of the causes of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).



MEISTER SEELIG & FEIN LLP

*Honorable Richard J. Sullivan*
*January 9, 2015*
*Page 2 of 3*

In Count I of the Complaint, Next alleges that Viber breached a Non-Disclosure and Confidentiality Agreement between Next Communications, Inc. and Viber (the "NDA")[1] by purportedly using Next's "Proprietary Information" to develop its own videoconferencing technology for an "unfinished feature" of Viber's app. (Complaint, ¶ 55). Next also alleges that Viber breached the NDA by sharing "Proprietary Information" with Rakuten. (Complaint, ¶ 56).[2]

The term "Proprietary Information" is defined in the NDA as "Information" [as defined in Section 1a] "…which is not generally available to the public and which the Disclosing Party designates as such". Count I is fatally flawed in that it fails to plead that Viber received, used or disclosed any information from Next that could possibly be deemed to constitute "Proprietary Information" as defined in the NDA, and fails to clearly describe how Next has been damaged.

Count II of the Complaint, styled as a claim for misappropriation of trade secrets, and Count III, which purports to assert a claim for misappropriation of a business idea, essentially assert the same claims as Count I, albeit with different labels. Both of the latter claims, like Count I, rely on alleged misappropriation of some aspect of the "Proprietary Information". Indeed, both Counts II and III, like Count I, recite the existence of the NDA as part of the alleged basis for such claims. (*See* Complaint, ¶¶64, 65 and 70). As such, as described below, Counts II and III suffer from the same defect as Count I in that the vague description of Proprietary Information in the Complaint cannot sustain such claims.

What the Complaint describes as "Proprietary Information" is entirely vague on the one hand, and on the other hand could not be considered proprietary under any circumstances. According to the Complaint, the Proprietary Information disclosed to Viber consisted solely of (i) a Viber representative downloading the "Nxt Gen App" (defined in Paragraph 15), which is publicly available in the Apple App Store (Complaint, ¶28); (ii) a "description" of the "NxtGen Proprietary Services", as defined in Paragraph 13 (Complaint, ¶29); (iii) its "Celebrity Event Management business idea", as described in Paragraph 18, i.e., the idea of allowing musicians to broadcast musical performances to mobile devices (Complaint, ¶30); and (iv) the possibility of using the NxtGen Proprietary Services to implement the Celebrity Event Management business idea and charging users on a per-minute basis (Complaint, ¶31).

According to Next's own allegations then, Next provided Viber with nothing more than a description of the NxtGen Proprietary Services, the components of which are vaguely described in Paragraph 13 of the Complaint, e.g., Cisco routers and Telarix's "back office services". Nowhere does the Complaint allege that Next disclosed anything to Viber in connection with the NxtGen Proprietary Services that could be considered "Proprietary Information" under the NDA. For example, Next does not allege that it disclosed any proprietary software code, specifications, programming tools, technical documentation, algorithms, methodologies, technology, or other details that would allow Viber to "do" anything. Moreover, the Complaint is void of any allegation of how Viber supposedly used NxtGen's "description" of the NxtGen Proprietary Services – other than to state that, "upon information and belief, Viber used the Proprietary

---

[1] *See* Complaint, Exh. 1.
[2] Section 1b of the NDA (Complaint, Exh. 1) defines the term "Party" as "either entity executing this Agreement and any subsidiary, affiliate, affiliate and/or parent company of such entity." The Complaint acknowledges Rakuten's purchase of Viber (Complaint, ¶35), and as such, Next's claim that Viber wrongfully disclosed the Proprietary Information to Rakuten, its parent company, is not actionable.


**MEISTER SEELIG & FEIN LLP**

*Honorable Richard J. Sullivan*
*January 9, 2015*
*Page 3 of 3*

Information to develop its own videoconferencing technology, which is currently an unfinished feature in the Viber App." (Complaint, ¶55).

The balance of the allegedly wrongfully used and disclosed Proprietary Information, according to Next, consists of the publicly-available Nxt Gen App (Complaint, ¶¶15, 28), and the Celebrity Event Management business idea, which, according to the Complaint, is nothing more than the concept of using the NxtGen Proprietary Services to allow celebrities such as a musician to broadcast live performances to users' mobile devices – an idea that is hardly novel or proprietary to Next. (*See* Complaint, ¶¶18, 30). Even if designated by Next as "Proprietary," the NDA expressly excludes information which is, among other things, "generally known to the public." (Complaint, Exh. 1, ¶3).

Furthermore, the Complaint merely speculates, *upon information and belief*, that Viber has used the Proprietary Information to "develop its own videoconferencing technology, which is currently an unfinished feature in the Viber App." (Complaint, ¶55). In other words, Next has no real basis to believe that Viber is making *any* use of the alleged Proprietary Information, and cannot even point to a product or service that Viber has commercially implemented in order to attempt to back up its claim. Count II suffers from this same defect (*see* Complaint, ¶65), as does Count III, which states only that, "[u]pon information and belief, Viber is implementing the Celebrity Event Management business idea into its Viber App, and thus *plans to launch* a competing service." (See Complaint ¶73). [Emphasis added].

In light of the above, each of the Counts in the Complaint fail to state a claim against Viber, as reflected in the following case law: *See Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 2009 WL 362118 at *4, 6 (S.D.N.Y. 2009) (dismissing breach of confidentiality agreement claim where the allegations failed to identify "any facts or categories of confidential information that defendant used in contravention of that agreement" and noting the claim also fails because there was no "clear demonstration of damages"); *Jinno International Co. v. Premier Fabrics, Inc.*, 2013 WL 4780049 at *5 (S.D.N.Y. 2013) (dismissing misappropriation of trade secrets claim where the allegations were insufficient to show what information was secret); *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942 at *5 (S.D.N.Y. 2014) (dismissing misappropriation of trade secrets claim where the alleged information was its "product" rather than information used to run its business); *Lapine v. Seinfeld et al.*, 918 N.Y.S.2d 313, 320-321 (Sup. Ct. 2011) (dismissing misappropriation of idea claim where there is a lack of novelty and explaining that ideas in the public domain or which are merely "elaboration[s]" on or "renovation[s]" of known elements are not novel).

Based upon the foregoing, Viber respectfully requests leave to file a motion to dismiss the Complaint.

Respectfully submitted,

Jeffrey Weingart

cc:   Daniel Foodman, Esq., df@wnflaw.com
      Carlos Nunez-Vivas, Esq., can@wnflaw.com
      Neil Leon Postrygacz, Esq., neilpostrygacz@gmail.com