# WNF
## LAW, P.L.

**WASERSTEIN NUNEZ & FOODMAN**

January 14, 2015

***Via ECF and Electronic Mail***
Honorable Richard J. Sullivan
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007

      Re:    *Next Comms. Inc., et al v. Viber Media, Inc.,* No. 1:14-cv-08190-RJS

Dear Judge Sullivan:

We represent Next Communications, Inc. and its subsidiary, NxtGn, Inc. (collectively, "Next"). Next sued Viber Media, Inc. for breach of contract, specifically a non-disclosure agreement (Count I), misappropriation of trade secrets, and misappropriation of a business idea. (*See* Compl., Dkt. No. 1). On January 9, 2015, Viber requested a pre-motion conference seeking leave to file a pre-answer motion to dismiss. The Court should deny Viber's request because, as explained below, Viber's motion would be meritless.

In that regard, "[to] survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must 'provide the grounds upon which [the] claim rests.' *Capitol Records LLC v. Redigi Inc.*, No. 12-CV-95 RJS, 2014 WL 4354675, at *1 (S.D.N.Y. Sept. 2, 2014) (Sullivan, J.) (citation omitted). This means that a plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is not required to "include 'heightened fact pleading of specifics' to survive a Rule 12(b)(6) motion, 'but only enough facts to state a claim to relief that is plausible on its face.'" *Brody v. Brody*, No. 07 CIV. 7981RJS, 2009 WL 436404, at *2 (S.D.N.Y. Feb. 17, 2009) (Sullivan, J.) (quoting *Twombly,* 550 U.S. at 570).

Viber primarily argues in its letter that Next's trade secrets are not really secret. However, whether information constitutes a trade secret "is a highly fact-specific inquiry...." *Financial Technologies Intern., Inc. v. Smith*, 247 F. Supp. 2d 397,411 (S.D.N.Y. 2002). Thus, whether Next's trade secrets are secret cannot be answered at this stage of the case. *Medtech Products, Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 788-790 (S.D.N.Y. 2008) (denying motion to dismiss a misappropriation of trade secrets claim).[1]

### Next Sufficiently Alleged a Claim for Breach of Contract.

Viber argues that Count I, for breach of contract, is "fatally flawed in that it fails to plead that Viber received, used or disclosed any information from Next that could possibly be deemed

---

[1] Viber relies on a New York state case, *Lapine v. Seinfeld,* 918 N.Y.S. 2d 313, 320-21 (Sup. Ct. 2011) for the proposition that the Court can examine the novelty of certain ideas on a motion to dismiss. But in that case the Court considered documentary evidence under CPLR 3211(a)(1), and thus it is inapplicable here.

to constitute 'Proprietary Information' as defined in the NDA, and fails to clearly describe how Next has been damaged." (Ltr. at 2). This argument is flawed. Next's complaint describes in great detail the following:

- The specific non-public and proprietary information at issue, which consists of the NxtGn Proprietary Services and the Celebrity Event Management business idea (collectively the "Proprietary Information"). (Compl. ¶¶ 13-18).
- The Proprietary Information has been maintained confidentially by Next. (*Id.* ¶ 19).
- Viber received a presentation detailing this Proprietary Information. (*Id.* ¶ 26).
- Next demonstrated the NxtGn App to Viber. (*Id.* ¶ 28).
- The NxtGn App is non-public, as it cannot be used without a code provided by Next. (*Id.*)
- Viber's Chief Technology Officer and members of its R&D team received a presentation containing an "in-depth description" of Next's proprietary information. (*Id.* ¶ 29).
- Next shared its confidential business idea with Viber. (*Id.* ¶ 30).
- Next designated information provided to Viber as proprietary under the NDA. (*Id.* ¶ 51).
- Viber is using Next's proprietary information to develop a new feature in Viber's app, which Next learned from Viber's largest shareholder, Mr. Benny Shabtai, whose family owned a 55.2% stake in Viber before it was acquired by Rakuten. (*Id.* ¶¶ 40, 55).
- Viber shared Next's proprietary information with Rakuten *before*[2] Rakuten acquired Viber. (*Id.* ¶¶ 41, 56).

In sum, Next alleges that Viber received (¶¶ 26, 28, 29, 30), used (¶¶ 40, 55), *and* disclosed (¶ 41) information that constitutes proprietary information under the NDA (¶¶ 13-18, 19, 51). Next also detailed how it has been and will continue to be damaged by Viber's breach. (¶¶ 57, 58). Accordingly, Next stated a claim for breach of contract, and Viber is without grounds to move to dismiss Count I of the Complaint.[3]

> ### Next Sufficiently Alleged Claims for Misappropriation of Trade Secrets and Misappropriation of a Business Idea.

Count II of the Complaint is a claim for misappropriation of trade secrets with respect to the NxtGn Proprietary Services, and Count III is a distinct[4] claim for misappropriation of a business idea with respect to the Celebrity Event Management business idea. Viber argues that

---

[2] In Footnote 2 of its letter, Viber argues that "Next's claim that Viber wrongfully disclosed the Proprietary Information to Rakuten, its parent company, is not actionable." (Ltr. at 2, fn2). Next alleges that Viber shared its Proprietary Information with Rakuten before the acquisition, however, and thus, Next's claim is actionable.

[3] Viber relies on *Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, LLC*, No. 05-cv-6882, 2009 WL 362118 (S.D.N.Y. Feb. 9, 2009) to support its contention that Next's breach of contract claim should be dismissed for failure to adequately identify the confidential information at issue. (Ltr. at 3). Viber's reliance on *Boccardi* is misplaced because in that case the plaintiff identified categories of information that included confidential and non-confidential information and did not specify which information the defendant allegedly used or whether it was confidential. *Id.* at *4. Here, Next specifically identified the Proprietary Information that Viber received, used, and disclosed.

[4] Viber missed the clear distinction between Counts II and III, as it cites to *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014) for the proposition that a product like the business idea that Viber misappropriated cannot be a trade secret. That may be true, but it is irrelevant because Viber does not allege that the business idea is a trade secret.

both counts are insufficient because Next only provides a "vague description of Proprietary Information in the Complaint...." (Ltr. at 2). There are two problems with Viber's argument: *First*, as explained above, Next provided a detailed description of the Proprietary Information in its Complaint. (Compl. ¶¶ 13-18). *Second*, "[d]etailed allegations concerning the nature of the alleged trade secrets are not necessary at the pleading stage." *Jinno Int'l Co. v. Premier Fabrics, Inc.*, No. 12 CIV. 07820 LGS, 2013 WL 4780049, at *5 (S.D.N.Y. May 24, 2013) (citing *Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 789 (S.D.N.Y.2008) ("[S]pecificity as to the precise trade secrets misappropriated is not required in order for [plaintiff] to defeat the present Motions to Dismiss.") Thus, while Next provided a detailed description of the Proprietary Information that Viber misappropriated, it was not required to do so at this stage.

This should come as no surprise to Viber, given that it cited *Jinno* in its letter for the unremarkable proposition that a plaintiff must sufficiently allege that trade secrets are secret. However, unlike in *Jinno,* Next alleged facts sufficient to show that its Proprietary Information is secret. Specifically, Next alleged that the proprietary information that it provided to Viber was "maintained confidentially..." by Next, and only made available to certain third parties that had also signed an NDA. (¶ 19). Next also alleged that it undertakes "efforts to ensure that its trade secrets are kept secret and not generally known to the public," and that, to that end, Next required Viber to sign an NDA before it could access Next's proprietary information. (¶ 64). Indeed, these allegations are exactly what the *Jinno* court explained are necessary to state a claim for misappropriation of trade secrets:

> "[I]n order to state a claim, [Premier] must allege facts sufficient to show that the information in fact is secret – for example by disclosing the measures it took to protect the secrecy of the information, either in general or in its relationship with Jinno."

*Jinno Intern. Co.*, 2013 WL 4780049 at *5. Thus, Next sufficiently alleged that its trade secrets are secret.

Viber also claims that "Next has no real basis to believe that Viber is making *any* use of the alleged Proprietary Information, and cannot even point to a product or service that Viber has commercially implemented in order to attempt to back up its claim." (Ltr. at 3). But, as explained above, Next alleged that Viber is using Next's Proprietary Information to develop a new feature in Viber's app. (Compl. ¶¶ 40, 55). And Next provided the factual basis for that allegation, namely information learned from Mr. Benny Shabtai, who controlled 55.2% of Viber's shares before Rakuten acquired Viber. (*Id.*) Accordingly, Viber adequately alleged that Viber has used Next's trade secrets.

For these reasons, the Court should deny Viber's request for leave to file a motion to dismiss, and require Viber to answer the Complaint.

Respectfully Submitted,

Daniel Foodman