UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(SULLIVAN/NETBURN)

Civil Action No. 14-CV-08190-RJS

Next Communications, Inc.,
a Delaware corporation, and
NxtGn, Inc., a Florida corporation,

Plaintiffs,

v.

Viber Media, Inc.,
a Luxembourg corporation

Defendant.

_____/


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………....ii

FACTUAL BACKGROUND…………………………………………………………………...1

STANDARD OF REVIEW…………………………………………………………………..5

ARGUMENT………………………………………………………………………………6

   I.    COUNT I - BREACH OF NDA…………………………………………………..6

   II.   COUNT II – MISAPPROPRIATION OF TRADE SECRETS…………………………7

   III.  COUNT III – MISAPPROPRIATION OF A BUSINESS IDEA………………………13

   IV.  COUNT IV – UNJUST ENRICHMENT …………………………………………....15

   V.   FORUM NON CONVENIENS…………………………………………………....16

CONCLUSION……………………………………………………………………………16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v Cox*, 10-CIV-7118-SAS, 2011 WL 2436705, at *2 (S.D.N.Y. June 16, 2011)................. 6

*Alliance Sec. Products, Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 459 (S.D.N.Y. 2007) ........... 13

*Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095 (N.Y. 1993) ............................................ 14

*Bears, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
361 F. Supp. 2d 283, 304 (S.D.N.Y. 2005)................................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) ................................................................. 5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573, 586 (2d Cir. 2006).................................................................................................. 15

*Downey v. Gen. Foods Corp.*, 286 N.E.2d 257 (N.Y. 1972) ......................................................... 14

*Eastman Kodak Co. v. Powers Film Products*,
189 A.D. 556, 179 N.Y.S. 325, 329 (4th Dept. 1919) .................................................................. 10

*First Investors Corp. v. Liberty Mut. Ins. Corp.*, 152 F.3d 162, 168 (2d Cir.1998) ...................... 6

*Foundation Ventures, LLC v. F2G Ltd.*,
08-CIV-10066, 2010 WL 3187294, at *8 (S.D.N.Y. Aug. 11, 2010) ......................................... 15

*Gaetano Associates LTD v. Artee Collections, Inc.*,
05-CIV-3329-(DLC), 2006 WL 3026080, *1 (S.D.N.Y. Oct. 25, 2006) ...................................... 9

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ... 5

*Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001)............................................ 15

*Head Ski Co., Inc. v. Kam Ski Co., Inc.*, 158 F. Supp. 919 (D.C. Md. 1958) ............................... 8

*Hogan v. DC Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999) ................................................. 13

*Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.*,
920 F.2d 171, 174 (2d Cir. 1990)............................................................................................... 8, 9

*Jinno Int'l Co. v. Premier Fabrics, Inc.*,
12-CIV-07820-LGS, 2013 WL 4780049, at *5 (S.D.N.Y. May 24, 2013) .................................. 8

*Lindner v. Int'l Business Machines Corp.*,
06-CIV- 4751-(RJS), 2008 WL 2461934, at *16-17 (S.D.N.Y. June 18, 2008) ......................... 11

*LivePerson, Inc. v. 24/7 Customer, Inc.,*
14-CIV-1559-RWS, 2015 WL 249329, at *10 (S.D.N.Y. Jan. 16, 2015) ..................................... 9

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)………………………15

*McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985) ...................................................... 13

*Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp. 2d 778, 789 (S.D.N.Y. 2008) ................... 8, 9

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999) .................................... 8, 12

*Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 374-80 (2d Cir. 2000) ................. 14

*Ostrolenk Faber LLP v. Unigene Labs., Inc.,*
12-CIV-3991-HB, 2012 WL 3114742, at *2 (S.D.N.Y. Aug. 1, 2012) ........................................ 6

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) .................... 5

*Paul v. Haley*, 588 N.Y.S.2d 897, 903 (N.Y. App. Div. 1992) ................................................... 13

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy,*
449 Fed. Appx. 57, 58 (2d Cir. 2011) ........................................................................................ 16

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 290-91 (S.D.N.Y. 1995) . 6

*SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. July 20, 2007)............. 10, 11

*Sit-Up Ltd. v. IAC/InterActiveCorp.,*
05-CIV-9292-(DLC), 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008) .................................... 7

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) ........ 8

*Wilmoth v. Sandor*, 686 NY.S.2d 388, 390 (N.Y. App. Div. 1999) ............................................ 16

## Other Authorities

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 6, 7

Restatement of Torts § 757 cmt. B, at 5 ...................................................................................... 8

## FACTUAL BACKGROUND

This action involves claims for breach of a Non-Disclosure and Confidentiality Agreement ("NDA") (Count I), misappropriation of trade secrets (Count II), misappropriation of a business idea (Count III), and unjust enrichment (Count IV). In turn, the claims involve an NDA signed by the Plaintiff Next Communications, Inc. ("Next"), a provider of wholesale long distance voice, data and video services for wired and wireless telecommunication carriers throughout the world, and Defendant Viber Media, Inc. ("Viber"), the owner of the "Viber App," which allows users to make voice calls and texts on mobile platforms and computers. (Amended Complaint ("AC") ¶¶ 7 and 27). Pursuant to the NDA, the term "Party" includes subsidiaries of the parties executing it. (NDA ¶ 1.b). Accordingly, the NDA also includes Plaintiff NxtGn, Inc. ("Nxt Gn"), a subsidiary of Next. (AC ¶ 8) (collectively, Next and Nxt Gn will be referred to as the "Plaintiffs").

The claims also involve Plaintiff's trade secrets and novel business idea that applies the trade secrets. Specifically, Plaintiff took certain existing videoconferencing and networking technology, along with certain proprietary networking technology and software, and developed a unique set of processes that, when combined, allow for (a) the efficient delivery of high definition videoconferencing over low-bandwidth networks; (b) the ability for various components that previously communicated using various different protocols to communicate directly; (c) the ability to scale the number of users on a single videoconference to over a million simultaneous users; (d) the ability to deliver advanced videoconferencing features, including the ability for each of potentially millions of individual users to customize their view of the video feed without impacting the experience of other users; and (e) the ability generate detailed records of individual usage, which in turn allows for the ability to monetize advanced videoconferencing services, including the ability to charge end-users on a per-minute basis. (AC ¶ 20).

The trade secrets that allow for such unprecedented use are the specific components used, the way these components fit together as building blocks to form a unique whole, and the process by which these components interact and work efficiently (the "NxtGn Proprietary Services"). (AC ¶ 21). These trade secrets give rise to a trade secret specifically identified in the Amended Complaint: the NxtGn App's capabilities.  (AC ¶ 16).[1]  The capabilities of the "NxtGn App," which relies on the NxtGn Proprietary Services, constitute a trade secret in itself, which is "not currently available for use by the general public." (*Id.*).  The Amended Complaint specifically states that this application "allows millions of people to connect simultaneously to the same videoconferencing feed." (AC ¶ 17).  It allows each of the millions of users to customize his own video experience over his mobile device without affecting the video feed to the other millions of users.  (AC ¶¶ 17-18).  This in itself is unprecedented.

From this trade secret emerged the novel business idea: ████████████████████████ ("CEM").  (AC ¶ 22).  The idea is to allow ██████████████████████████ ████████████████████████████████████████████ (*Id.*).  The novel parts involve allowing ██████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ (AC ¶¶ 23-25).  None of the alleged U.S. Patent Applications described by Defendant Viber in its Motion comes remotely close to this unique and novel idea.  For example, none allows any ████████████

---

[1]   While the NxtGn App is available on Apple's iTunes Store for downloading, a user would be unable to use the application without a code from the Plaintiffs.  (AC ¶ 35).  Currently, this code is not being provided by Plaintiffs, except in specific circumstances, such as pursuant to an NDA, as was the done in this case for a demonstration by Plaintiffs to Viber.  (*Id.*).

Page 2

███████████████████████████████.  The reason is that this is completely new, unprecedented.

And Viber knows this full well.  It all started in June 2012 when Viber contacted Next to see whether Next would assist it in developing the ability to transmit high quality video calls over mobile devices.  (AC ¶ 29).  On June 22, the parties signed the NDA (Ex. 1 to AC).  The NDA prohibits the disclosure of any proprietary information to any third parties, and also restricts the use of any proprietary information solely for the purpose of facilitating a possible business transaction between Viber and Next.  (AC ¶ 30).  Clearly, the NDA prohibited Viber from sharing any of Plaintiff's proprietary information (including the NxtGn Proprietary Services, NxtGn App and CEM) with Rakuten, a third party that later acquired Viber, and from using Plaintiff's proprietary information to induce Rakuten to acquire Viber.

On or about June 11, 2013, Next demonstrated the NxtGn App to Viber.  As part of the demonstration, Viber installed the NxtGn App on an iPhone and used a code provided by Plaintiffs pursuant to the NDA.  (AC ¶ 35).  On June 13, 2013, Telarix (a company partnered with Next), with Next's consent, made an in-depth presentation to Viber of the NxtGn Proprietary Services, including the process by which the NxtGn Proprietary Services can be put to use to provide advanced videoconferencing technology like that found in the NxtGn App.  (AC ¶ 10 and 36).  Next also shared its confidential CEM business idea with Viber, as an example of how Viber could integrate the NxtGn Proprietary Services into Viber's app to monetize the advanced videoconferencing technology made possible by the NxtGn Proprietary Services.  (AC ¶¶ 37-38).

Unfortunately, after receiving a detailed presentation regarding the NxtGn Proprietary Services, the NxtGn App and the CEM business idea, Viber ceased all communications with Next until late January 2014, when a Viber representative requested that Next's CEO, Mr. Arik Meimoun,

meet in April 2014 in Israel with Viber's CEO.  (AC ¶ 42).  On February 17, 2014, Rakuten, Inc., a Japanese online retailer, announced that it would buy Viber for $900 million.  Viber had a net operating loss of $29.5 million the prior year, and the Viber App had no videoconferencing abilities as of the date of the acquisition.  (AC ¶ 43).

After the acquisition by Rakuten, and before the April 2014 meeting, Plaintiffs discovered that Viber was using the CEM business idea that Next confidentially disclosed to Viber for the Viber App.  (AC ¶49).  Specifically, Mr. Benny Shabtai, whose family owned a 55.2% stake in Viber before it was purchased by Rakuten, disclosed to Plaintiffs that the Viber App had an unfinished feature that was exactly like the CEM idea.  Mr. Shabtai disclosed that Viber submitted in writing this unfinished feature of the Viber App to Rakuten ahead of the acquisition.  (AC ¶¶ 45-50).  Because the CEM idea relies on the NxtGn App and the NxtGn Proprietary Services, it became clear that Viber unlawfully used and disclosed Plaintiff's proprietary information to Rakuten as an inducement for the Japanese company to acquire Viber.  And the motive is clear: Viber had difficulties in monetizing its large user-base, which caused it to operate at a loss.  (AC ¶ 44).  Plaintiff's proprietary information allowed it to provide Rakuten with a business plan for the monetization of its large user-base.

And, Viber knows this full well.  Yet, in April 2014, Viber's CEO incredibly claimed that he was unaware of any meetings among Viber, Next and Telarix.  (AC ¶ 51).  But the facts belied his ludicrous position.  Indeed, in May 2014, Viber approached Telarix to inquire about its back-office billing services in connection with videoconferencing technology, which back-office billing services were the ones offered together with Plaintiff's proprietary information.  (AC ¶¶ 53-54).  Logic and common sense establish that Viber sought this information from Telarix to continue its attempts to monetize Plaintiff's proprietary information.  (*Id.*).  Otherwise, there would have been no reason for Viber to approach Telarix for its back-office billing services.

To add insult to injury, on November 18, 2014, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

Based on the foregoing, Plaintiffs stated causes of action for breach of the NDA (Count I), misappropriation of trade secrets (Count II), misappropriation of a business idea (Count III), and unjust enrichment (Count IV).

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). In reviewing a motion to dismiss, the court "must accept all allegations in the complaint as true and draw all inferences in the [Plaintiff's] favor." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). A case should not be dismissed unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief. *Id.*

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This does not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. It is enough that the complaint contains "a short and plain statement of the claim" sufficient to put the defendant on notice of the

grounds for which plaintiff seeks relief.  *See* Fed. R. Civ. P. 8(a)(2); *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 290-91 (S.D.N.Y. 1995).

## ARGUMENT

### I.      COUNT I – BREACH OF CONTRACT

To state a claim for breach of contract, a party must allege: (1) the existence of a contract; (2) performance of the contact by that party; (3) breach of the contract by the other party; and (4) damages as a result of the breach.  *See First Investors Corp. v. Liberty Mut. Ins. Corp.*, 152 F.3d 162, 168 (2d Cir.1998); *Allen v Cox*, 10-CIV-7118-SAS, 2011 WL 2436705, at *2 (S.D.N.Y. June 16, 2011).  A plaintiff does not have to plead each element individually.  *See Ostrolenk Faber LLP v. Unigene Labs., Inc.*, 12-CIV-3991-HB, 2012 WL 3114742, at *2 (S.D.N.Y. Aug. 1, 2012).

Plaintiff alleged all of the elements to establish a breach of the NDA.  The NDA defines "Proprietary Information" as "Information" that the disclosing party desires to protect against unrestricted disclosure or competitive use, which is not generally available to the public and which the disclosing party designates as such.  (NDA ¶ 1.c.).  The term "Information" is broadly defined in the NDA as "any and all information, specifications, drawings, … product features, … software, computer programs, … and all other technical, financial, customer or business information."

Pursuant to the NDA, Plaintiffs designated the information[2] disclosed to Viber as Proprietary Information under the NDA.  Accordingly, pursuant to the NDA, Viber was prohibited from disclosing that information to any third parties (like Rakuten).  (NDA ¶ 2).  Indeed, the NDA prohibits disclosure "to any employees, agents, directors, officers or representatives of any company with which Receiving Party is or ***shall become*** affiliated …"  (NDA ¶ 2.a.) (emphasis added).

---

[2]   The Information shared includes the CEM, the NxtGn Proprietary Services and the capabilities of the NxtGn App.

In addition, the NDA restricts the use of the Proprietary Information "for purposes directly related to the purpose expressed herein above and for no other purposes." (NDA ¶ 2.c.). The purpose expressed in the NDA was to assess "possible business transactions between the Parties". (NDA p. 1). Pursuant to the NDA, the duty of confidentiality survived the termination of the NDA. (NDA ¶ 2.d).

Viber breached the NDA by submitting to Rakuten Plaintiff's Proprietary Information prior to Rakuten's acquisition of Viber, and by using the Proprietary Information for its Viber App[3], which unlawfully goes beyond the only permissible use of the information, which was only for the purpose of a possible business transaction between Plaintiffs and Viber. (AC ¶ 70). As a result, pursuant to the terms of the NDA, Plaintiffs are entitled to injunctive relief in addition to damages to be determined at trial.

These allegations are sufficient to allow Plaintiffs to maintain its breach of contract claim. As stated above, each element need not by separately pleaded; all that is necessary, which Plaintiffs have done, is "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## II.   COUNT II – MISAPPROPRIATION OF TRADE SECRETS

Under New York law, for a party to succeed on a claim for the misappropriation of trade secrets, it must demonstrate: (1) that it possessed a trade secret; and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, 05-CIV-9292-(DLC), 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38,

---

[3]     There is nothing speculative about this allegation. It is based in part on the admission of Mr. Shabtai, who as the seller of his family's 55.2% stake in Viber to Rakuten, was intimately familiar with Rakuten's acquisition of Viber.

43-44 (2d Cir. 1999).  Of course, "[d]etailed allegations concerning the nature of the alleged trade secrets are not necessary at the pleading stage." *Jinno Int'l Co. v. Premier Fabrics, Inc.*, 12-CIV-07820-LGS, 2013 WL 4780049, at *5 (S.D.N.Y. May 24, 2013) (citing *Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp. 2d 778, 789 (S.D.N.Y. 2008) ("[S]pecificity as to the precise trade secrets misappropriated is not required in order for [plaintiff] to defeat the present Motions to Dismiss.")).

New York courts define "trade secrets" broadly as "'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'"  *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (citing Restatement of Torts § 757 cmt. B, at 5).  It "is not simply information as to single or ephemeral events in the conduct of the business; rather, it is *a process or device* for continuous use in the operation of the business." *Id.* (emphasis added).  This combination of characteristics and components can, by itself, be in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage is a protectable secret.  *See Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990); *see also Head Ski Co., Inc. v. Kam Ski Co., Inc.*, 158 F. Supp. 919 (D.C. Md. 1958) (holding "knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret").

In determining whether a trade secret exists, New York courts have considered the following factors to be relevant:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by [the plaintiff] to guard the secrecy of the information; (4) the value of the information to [the plaintiff] and to [its] competitors; (5) the amount of effort or money expended by [the plaintiff] in

developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Integrated Cash Mgmt. Services*, 920 F.2d at 173. "These factors, however, are difficult to apply in the absence of discovery, making their consideration sometimes futile in the context of a motion to dismiss." *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 n. 5 (S.D.N.Y. 2008). "These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim, and 'the most important consideration is whether the information is actually a secret.'" *LivePerson, Inc. v. 24/7 Customer, Inc.*, 14-CIV-1559-RWS, 2015 WL 249329, at *10 (S.D.N.Y. Jan. 16, 2015).

Here, the manner in which Plaintiffs' programs interact and fit together for a unique whole, and the capabilities of the NxtGn App, which are key to the product's success, are not known outside of Plaintiffs.[4]  Contrary to Viber's suggestion, the non-secret nature of any individual program, which may form part of Plaintiffs' trade secret, does not alter this conclusion. Further, while Plaintiffs must demonstrate that they possess a trade secret, Viber improperly and without any legal support insists on a heightened pleading standard that would require Plaintiffs to be specific as to the precise trade secrets misappropriated by Viber. *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 789 (S.D.N.Y. 2008) ("[S]pecificity as to the precise trade secrets misappropriated is not required in order for [plaintiff] to defeat the present Motions to Dismiss."); *Gaetano Associates LTD v. Artee Collections, Inc.*, 05-CIV-3329-(DLC), 2006 WL 3026080, *1 (S.D.N.Y. Oct. 25, 2006) ("Plaintiff contends that the [counter]claim is defective because defendants have not explained 'how the list of names or quantities of fabric sold constitutes a trade secret, what steps defendants took to preserve the secrecy of the information or how plaintiffs

---

[4]      Of course, Plaintiffs may disclose the proprietary information pursuant to an NDA, as it was done in this case. This obviously is consistent with a trade secret, given that it is a step taken to maintain the secret nature of the proprietary information.

improperly obtained the alleged trade secret.' Under the notice pleading standard, however, defendants are *not* required to do so.") (emphasis added); *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. July 20, 2007) (refusing to require a plaintiff to identify trade secrets in its complaint - "Naturally, [the plaintiff] has no obligation to reveal those [trade] secrets in the Complaint simply to prove that they exist").  The rationale is that the "plaintiff [is] **not** bound to spread its secrets in detail through a complaint, in an action wherein it sought to preserve them inviolate."  *SD Protection, Inc.*, 498 F. Supp. 2d at 586 (quoting from *Eastman Kodak Co. v. Powers Film Products*, 189 A.D. 556, 179 N.Y.S. 325, 329 (4th Dept. 1919)) (emphasis added).

In this case, Plaintiffs have sufficiently alleged that the NxtGn Proprietary Services, including the capabilities of the NxtGn App, are protectable trade secrets, through its unified process, design and operation of which, in unique combination, affords a competitive advantage. (AC ¶¶ 13-21).  Indeed, Plaintiffs ensure that its trade secrets are kept secret by only sharing the specific components used, the way these components fit together as building blocks to form a unique whole, the process by which these components interact and work efficiently, and the capabilities of the NxtGn App, when necessary, and only with those who agree to keep the information secret by signing a non-disclosure agreement.  (AC ¶ 77).  In addition, the unique combination of software and proprietary network technology is neither obvious nor easily duplicated.  As alleged, Plaintiffs derive economic value from this secret information because it is not readily ascertainable or known, using proper means, by third parties who can obtain economic benefit for their use.  (AC ¶ 75-76).

Unquestionably, Viber already knows these trade secrets because Plaintiffs disclosed them to Viber pursuant to the terms of the NDA.  Accordingly, Viber is fully aware and on notice of the specific nature of the trade secrets described in the Amended Complaint.  This is sufficient.  The

law does not require Plaintiffs to "spread its secrets in detail through a complaint, in an action wherein it sought to preserve them inviolate." *SD Protection, Inc.*, 498 F. Supp. 2d at 586.

Moreover, Plaintiffs sufficiently alleged that Viber misappropriated Plaintiffs' trade secrets by developing its own advanced teleconferencing technology like that found in the NxtGN App. (AC ¶ 49, 56-57, 78 and 79).[5]   At a minimum, Plaintiffs trade secrets are part and parcel of an unfinished feature in the Viber App.  (AC ¶¶ 49-55).

Viber's continued use of the trade secrets will cause Plaintiffs serious irreparable harm, as Viber would be using Plaintiff's own trade secrets to compete against Plaintiffs, and would deprive Plaintiffs of being the first one in an emerging market to exploit this unique set of processes to allow for (a) the efficient delivery of high definition videoconferencing over low-bandwidth networks; (b) the ability for various components that previously communicated using various different protocols to communicate directly; (c) the ability to scale the number of users on a single videoconference to over a million simultaneous users; (d) the ability to deliver advanced videoconferencing features, including the ability for each of potentially millions of individual users

---

[5]       Paragraph 78 of the Amended Complaint alleges that "[u]pon information and belief, Viber knowingly and willfully misappropriated the NxtGn Proprietary Services, in breach of the NDA, and is exploiting them for its own economic advantage over its competitors, including Next and NxtGn."  In *Lindner v. Int'l Business Machines Corp.*, 06-CIV- 4751-(RJS), 2008 WL 2461934, at *16-17 (S.D.N.Y. June 18, 2008) (Sullivan, J.), this Court held that where the "plaintiff alleges facts that are peculiarly within the opposing party's knowledge-namely, the statements allegedly made by defendants to third-parties in private conversations-plaintiff cannot be faulted, at this stage of the case, for asserting such facts on the basis of 'information and belief.'"

         Plaintiffs have satisfied their pleading obligations in this case.  In particular, Plaintiffs allegations "based on information and belief" relate to Viber's private conversations with third parties and the intimate details associated with its misappropriation and use of Plaintiffs' confidential and trade secret information – the facts of which are "peculiarly within the possession and knowledge" of Viber.  Therefore, the Court should not dismiss Plaintiffs' misappropriation of trade secrets claim based on pleading upon information and belief.   In addition, the information and belief, upon which the allegation is founded, are properly alleged in the Amended Complaint at paragraphs 27-38, 45, and 49-57.

to customize their view of the video feed without impacting the experience of other users; and, last but not least, (e) the ability generate detailed records of individual usage, which in turn allows for the ability to monetize advanced videoconferencing services, including the ability to charge end-users on a per-minute basis.  (AC ¶ 20).

Finally, the Second Circuit has recognized that an NDA does not preclude a trade secret misappropriation claim and that an NDA can, indeed, be used to satisfy certain elements of a claim for trade secret misappropriation. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir.1999) ("To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret ***in breach of an agreement***, confidential relationship or duty, or as a result of discovery by improper means.") (emphasis added).  This is clear and contrary to Viber's position. Specifically, contrary to Second Circuit precedent, Viber cites to *Bears, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 304 (S.D.N.Y. 2005) for the mistaken proposition that an NDA cannot form the basis of a claim for misappropriation of trade secrets. That is not what the case stands for.  The *Bears, Stearns* court held that, for the agreement to form the basis for a claim for misappropriation of trade secrets, the "confidential information" protected under the agreement must also constitute a "trade secret."  *Bears, Stearns Funding, Inc.*, 361 F. Supp. 2d at 305.  That is exactly what Plaintiffs have alleged in the Amended Complaint.  That is why the NDA forms the basis for the claims based on the breach of the NDA and misappropriation of trade secrets.  New York law allows a NDA to establish the underpinning of a misappropriation of a trade secrets claim and Plaintiffs can plead both breach of contract and misappropriation of trade secrets.  Therefore, the Court should not dismiss Plaintiff's misappropriation of trade secrets claim.

### III.   COUNT III – MISAPPROPRIATION OF A BUSINESS IDEA

In New York, in order to prevail on a misappropriation of a business idea claim, a party must prove: (1) the existence of a legal relationship between the parties in the form of a fiduciary relationship, an express contract, an implied-in-fact contract, or quasi-contract; and (2) that the idea is novel and concrete. *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985).

Viber argued that Plaintiffs' claim for misappropriation of a business idea should be dismissed because the CEM business idea is not novel. To support this argument, Viber cites to cases that state that in order to prove novelty, the idea must "'show genuine novelty and invention, and not merely a clever or useful adaptation of existing knowledge.'" *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999) (quoting *Paul v. Haley*, 588 N.Y.S.2d 897, 903 (N.Y. App. Div. 1992)). An idea that combines several known ideas may be novel, but it is not novel if it "consists of nothing more than a variation on a basic theme." *Alliance Sec. Products, Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 459 (S.D.N.Y. 2007).

First, it cannot be seriously disputed that the CEM idea is novel, though Viber attempts to do so by inappropriately[6] introducing a handful of irrelevant patent applications. But none of patent applications described by Viber in its Motion allows ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[6] It is inappropriate because those patent applications are outside of the four corners of the Amended Complaint. In ruling on a motion to dismiss, the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

███████████████████████████████████████████████████████████

████ No one has done this. This is genuine invention.

Second, Viber's analysis refers only to misappropriation of an idea based on a property theory. *Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095 (N.Y. 1993); *Downey v. Gen. Foods Corp.*, 286 N.E.2d 257 (N.Y. 1972) (finding that to the extent plaintiff's causes of action were grounded on assertions of a property right, they were untenable "if the elements of novelty and originality [were] absent, since the property right in an idea is based upon these two elements").

Here, Plaintiffs' claim based on the misappropriation of a business idea is also supported by the contract theory of disclosure of ideas. In contract-based claims, the plaintiff does not have to show novelty generally, but rather has to show "novelty to the buyer." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 374-80 (2d Cir. 2000). This is because in cases where a contract is involved the question is not whether the buyer misappropriated property from the seller, but whether the idea had value to the buyer and thus constitutes valid consideration. *Id.* at 378-379 (stating that the novelty to the buyer standard "comports with traditional principles of contract law" and "[w]hile an idea may be unoriginal or non-novel in a general sense, it may have substantial value to a particular buyer who is unaware of it and therefore willing to enter into contract to acquire and exploit it."). The contract theory of disclosure of ideas is applicable where, as here, there is a non-disclosure agreement and the plaintiff accuses the defendant of misappropriating the idea disclosed pursuant to its terms. *Id.* at 379-80.

Plaintiffs clearly alleged the existence of an express agreement (the NDA)[7] with Viber, and that their CEM idea was novel as to Viber because it expressed great enthusiasm in developing the

---

[7]    Amended Complaint ¶ 84. Plaintiffs also alleged an implied-in-fact contract, because Next presented its business idea with the understanding that it would be compensated should Viber adopt Next's trade secrets, proprietary information, or ideas. (AC ¶ 85).

idea and worked to misappropriate the idea after Viber severed its relationship with Plaintiffs.  (AC ¶ 41-42, 45-50, 84, 86-88).  Plaintiffs' idea had great value to Viber, which reaped benefits in a number of ways, *e.g.* by not having to expend resources pursuing the idea through other channels or by having a profit-making idea implemented sooner rather than later.  (AC ¶ 41).

Consequently, based on either the property theory or the contract theory of disclosure of ideas, the Court should not dismiss Plaintiffs' misappropriation of a business idea claim.

## IV.    COUNT IV – UNJUST ENRICHMENT

For a plaintiff to prevail on a claim of unjust enrichment, it must establish: (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience require restitution.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001).

Viber was unjustly enriched when Plaintiffs shared their NxtGn Proprietary Services, NxtGn App and CEM business idea, and Viber then proceeded to develop its own advanced videoconferencing technology like that found on the NxtGn App, and was acquired by Rakuten. Viber is now able to compete in this market because of the information gained during the meetings between Telarix and Viber, as well as NxtGn and Viber.  Viber did not have to expend the resources to pursue the idea through other channels and benefitted from having a profit-making idea implemented sooner rather than later.

While it is ordinarily true that an unjust enrichment claim can only be asserted in the absence of a valid contract, New York courts recognize that under some circumstances a party may assert alternative claims for breach of contract and unjust enrichment arising out of the same events.  *Foundation Ventures, LLC v. F2G Ltd.*, 08-CIV-10066, 2010 WL 3187294, at *8

(S.D.N.Y. Aug. 11, 2010) (stating that "[a] party may plead the alternative theories of breach of contract and unjust enrichment").

Viber cites to *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 Fed. Appx. 57, 58 (2d Cir. 2011), for the proposition that "when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in … unjust enrichment … are generally precluded, unless based on a duty independent of the contract." *Poplar Lane Farm*, 449 Fed. Appx. at 59. However, the case goes on to say that, this principle does not apply "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *Id.* In this situation, a plaintiff generally "will not be required to elect his or her remedies." *Wilmoth v. Sandor*, 686 NY.S.2d 388, 390 (N.Y. App. Div. 1999).

While there is no dispute as to the existence of a contract in this case, the application of the contract alleged by Plaintiffs has been challenged by Viber. Viber's Motion asserts that the provisions of the NDA did not apply to conversations with Rakuten. *See* Motion p. 21. As set forth above, Plaintiffs strongly disagree with Viber's argument. However, should the Court determine that Defendant is correct; Plaintiffs assert that Viber's conduct constitutes unjust enrichment.

Under the circumstances of this case and at this stage of the litigation, Plaintiffs are allowed to maintain their alternative claims of breach of contract and unjust enrichment. Therefore, the Court should not dismiss Plaintiff's unjust enrichment claims.

## V.   FORUM NON CONVENIENS

As to jurisdiction over the parties and venue, Plaintiffs agree that the Court has personal jurisdiction over the parties and proper venue pursuant to the NDA.

## CONCLUSION

For the forgoing reasons, Viber's Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted,

/s  *Daniel Foodman*
Daniel Foodman (pro hac vice)
df@wnflaw.com
Carlos Nunez-Vivas (pro hac vice)
can@wnflaw.com
WNF Law, P.L.
*Counsel for Plaintiffs*
1111 Brickell Avenue
Suite 2200
Miami, Florida 33131
Tel.: (305) 760-8500
Fax: (305) 760-8510

Neil Postrygacz (NP-1975)
neil@artfulaw.com
419  Lafayette Street
New York, NY 10003
Tel.: (212) 392-4945
Fax: (646) 514-1997

## CERTIFICATE OF SERVICE

I certify that on May 20, 2015, this document was served by electronic transmission through the Court's ECF filing system and by email upon Jeffrey Weingart, Esq., Meister, Seeling & Fein, LLP, 125 Park Avenue, 7th Floor, New York, New York, 10017.

/s  *Daniel Foodman*
Daniel Foodman