UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Next Communications, Inc. and NxtGn, Inc.,

Plaintiffs,

v.

Viber Media S.à r.l.,

Defendant.

Civil No. 1:14-CV-8190 (RJS)

**DEFENDANT VIBER MEDIA S.À R.L.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**UNREDACTED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1

Next's Opposition Simply Regurgitates And Embellishes the Amended Complaint .......... 1

Next Takes Liberties In Its Opposition Memo In An Attempt To Short Up Its Deficient Pleading .......... 3

Next Has Mischaracterized The Applicable Legal Standards And Case Law In An Attempt To Save Its Deficient Pleadings .......... 5

i. Next Incorrectly States The Applicable Trade Secret Pleading Standards .......... 5

ii. Next Misstates The Case Law .......... 7

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

### Cases

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
2014 WL 4651942 at *5 (S.D.N.Y. 2014) .......... 7

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162, 182 (2d Cir. 2012, *cert denied*, 133 S.Ct. 846 (2013) .......... 6

*Ashcroft v. Iqbal*
556 U.S. 662, 663-664 (2009) .......... 3

*Bear, Stearns Funding, Inc. v. Interface Groupe-Nevada, Inc.*,
361 F. Supp. 2d 283 (S.D.N.Y. 2005) .......... 9

*Jinno Int'l Co. v. Premier Fabrics, Inc.*,
2013 WL 4780049 (S.D.N.Y. 2013) .......... 5, 6

*Lindner v. Int'l Business Machines Corp.*,
2008 WL 2461934 (S.D.N.Y. 2008) .......... 8

*LinkCo, Inc. v. Fujitu Ltd.*,
230 F. Supp. 2d 492, 499 (S.D.N.Y. 2002) .......... 7

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) .......... 9

*Medtech Products Inc. v. Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008) .......... 7, 8

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
208 F.3d 368 (2d Cir. 2000) .......... 10

*SD Protection, Inc. v. Del Rio*,
498 F. Supp. 2d 576 (E.D.N.Y. 2007) .......... 8

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
118 F.3rd 955, 968 (2d Cir. 1997) .......... 7

**Other Authorities**

Fed.R.Civ.P. 12(b)(6) .......... 1

Defendant Viber Media S.à r.l. ("Viber") respectfully submits the following Reply Memorandum of Law in further support of its motion, pursuant to Fed.R.Civ.P. 12(b)(6), to Dismiss the Amended Complaint filed by Plaintiffs Next Communications, Inc. ("Next Communications") and NxtGn, Inc. ("NxtGn" and with "Next Communications," collectively, "Next").

## ARGUMENT

Next's Opposition Simply Regurgitates
And Embellishes the Amended Complaint

Next devotes much of its memorandum in opposition ("Opposition Memo") to enhanced restatements and embellishments of the unsupported allegations set forth in the Amended Complaint. Next apparently is of the view that the sheer repetition of this ever-evolving mantra will compensate for its failure to state any cognizable claim in the Amended Complaint. Ironically, Next's crafty embellishments of its now-familiar yarn in the Opposition Memo only highlight the Amended Complaint's fatal deficiencies.

Next's obfuscation around what it obliquely refers to as the "NxtGn Proprietary Services" is a case in point. In its Amended Complaint, Next defines such term, *without proposing trade secret redactions*, as "a unique method for various software and proprietary network technologies to interact in order to provide proprietary services. . . that allow Next and NxtGn to deliver advanced high definition videoconferencing to over millions of individual users across a wide-range of devices." (Amended Complaint ¶ 15).

In contrast, in its Opposition Memo, Next defines the "NxtGen Proprietary Services" as the "...the specific components used, the way these components fit together as building blocks to form a unique whole, and the process by which these components interact and work efficiently". (Opposition Memo, p. 2). According to Next's new story line, such "trade secrets" "give rise" to

yet another purported trade secret, namely the "NxtGn App's capabilities". *Id.* Finally, this "trade secret", according to Next, begat the "CEM" business idea. *Id.* Thus, for the first time, in its Opposition Memo, Next claims that the "capabilities of the 'NxtGn App'" are what "...constitute a trade secret in itself". In other words, Next is now claiming (albeit not in its pleadings) that a mere description of the NxtGn App's alleged functionality, i.e., "allows millions of people to connect simultaneously to the same videoconferencing feed", is an actionable trade secret. *Id.*

Next's latest story line iteration in its Opposition Memo is in further stark contrast to its Original Complaint, which defined the "NxtGn Proprietary Services" as a combination of (i) "NxtGn NVPC, which is a suite of software modules and hardware that includes an integrated Cisco Aggregation Services Router. . ."; and (ii) various alleged NxtGn "network nodes". (Original Complaint, ¶ 13). Such allegations are *nowhere to be found* in the Amended Complaint.

The migration of Next's story line from its Original Complaint, to the Amended Complaint, to the Opposition Memo, reveals that Next's trade secret allegations are an inconsistent mashup of tech buzz words that provide no meaningful information about the nature of its the claims against Viber. Against this backdrop, there is NO allegation in the Amended Complaint that Next ever exposed or disclosed to Viber any computer software code or specifications or any of Next's supposedly proprietary techniques or methodologies for using what are admittedly all third-party, non-Next components, including those, from Cisco, Vidyo, Inc. and Telarix. Next's attempt to plug this hole by stating in its Opposition Memo that Viber is "aware and on notice of the specific nature" of Next's alleged "unique combination of software

and proprietary network technology" (Opposition Memo, p. 10) does not change that the Amended Complaint asserts no such allegation.

In short, although Next hints that it has invented a sort of secret glue to make these non-proprietary components work together in an undisclosed way, it fails to allege anywhere in the Amended Complaint that the glue, or the formula for the glue, or how the glue is applied or maintained, was ever disclosed or provided to Viber. (*See generally,* Amended Complaint). Moreover, there is no allegation in the Amended Complaint that Viber, or for that matter Rakuten, ever had access to, or used the glue, or combined or used any of the alleged third-party components in the manner that Next vaguely outlines in the Amended Complaint (or in any other manner). *Id.* As a result, Viber is left to guess about what Next's allegations mean, or on what "facts" their accusations could possibly be based. Such bare bone allegations are insufficient to state a valid claim based upon alleged trade secret misappropriation or violation of a non-disclosure agreement.[1]

Next Takes Liberties In Its Opposition Memo
<u>In An Attempt To Shore Up Its Deficient Pleading</u>

Throughout its Opposition Memo, Next attempts to shore up the deficiencies in pleading by loosely paraphrasing, and then burnishing, allegations that are nowhere to be found in the Amended Complaint. Examples of Next's overreaching, include, *inter alia*, the following points:

-- Next states in the Opposition Memo (p. 4): "After the acquisition by Rakuten, and before the April 2014 meeting, Plaintiffs discovered that Viber was using the CEM business idea that Next confidentially disclosed to Viber for the Viber App." While Next cites to Paragraph 49

[1] *See Ashcroft v. Iqbal* 556 U.S. 662, 663-664 (2009) (the court does not need to accept as true "threadbare recitals" nor allegations which "are mere conclusions").

of the Amended Complaint, there is no such allegation in that paragraph or anywhere else in the Amended Complaint.

-- Next also states in its Opposition Memo that "Mr. Benny Shabtai . . . disclosed to Plaintiffs that the Viber App had an unfinished feature that was exactly like the CEM idea". *Id.* Next further expounds on this theory in its brief, stating, "There is nothing speculative about this allegation. It is based in part on the admission of Mr. Shabtai . . . ." (Opposition Memo, p. 7, n. 3). However, neither of these allegations appear anywhere in Paragraphs 49 or 50 of the Amended Complaint – or anywhere else. In particular, nowhere in the Amended Complaint is there any allegation that Mr. Shabtai ever knew about Next's alleged CEM business idea, or that the CEM business idea was part of any alleged discussion with him, or that Mr. Shabtai stated or acknowledged that the alleged unfinished feature of the Viber App had anything at all in common with the alleged CEM idea. (Amended Complaint, ¶¶ 49, 50).

-- Next misleadingly states in its Opposition Memo (p. 5) that Viber's introduction of Public Chats "adds insult to injury", and that "it appears that" Public Chats ". . . is the first step toward Viber's implementation of the CEM idea." While Next cites to Paragraphs 56 and 57 of the Amended Complaint as the basis of these statements, such paragraphs provide no such support. In fact, Next only speculates in the Amended Complaint, "upon information and belief", that Public Chats "is the first step toward Viber's implementation" of the alleged CEM idea -- apparently based on the following statement from Viber's Web site: "Take this vibe backstage, get closer to your favorite artists and experience what its' like to be a superstar." (Amended Complaint,¶¶ 56, 57). Next's attempt in its Opposition Memo to bolster such unfiltered speculation in its Amended Complaint only serves to highlight that the alleged CEM idea, as described by Next in its own pleading, has absolutely nothing to do with Viber's Public

Chats. If there were any real connection between the two, other than the word "celebrity", certainly Next would have already described it in the Amended Complaint. The reality is that nearly eight months after commencing this action, Next has cited nothing more concrete in its pleadings to support its speculation that Viber has used, or intends to use, the CEM idea, or that Next has suffered any resulting harm. Nor can it do so.

More than anything, the liberties which Next has taken in its Opposition Memo when describing the allegations contained in the Amended Complaint only highlight the insufficiency of the allegations contained therein. Having already had two opportunities to get it right in its pleadings, the Amended Complaint should be dismissed, and Next should not be provided with yet another bite at the apple.

Next Has Mischaracterized The
Applicable Legal Standards And Case Law
In An Attempt To Save Its Deficient Pleadings

i. Next Incorrectly States The Applicable
Trade Secret Pleading Standards

Next's carefully carved-up references to *Jinno Int'l Co. v. Premier Fabrics, Inc.*, 2013 WL 4780049 (S.D.N.Y. 2013) for the proposition that "[d]etailed allegations concerning the nature of the alleged trade secrets are not necessary at the pleading stage" is just one example of how Next has repeatedly shaded case citations to serve its purpose. (Opposition Memo, p. 8). The language in *Jinno* which Next cherry-picked shows that Next is intentionally attempting to mislead the Court regarding the import of the case and the pleading standards applicable to trade secret cases.

Next fails to mention, for example, the *Jinno* court's focus on the requirement that in a trade secret case, the plaintiff, while not required to disclose its trade secrets in order to state a claim, ". . . must allege facts sufficient to show that the information is in fact secret....". *Id.* at

*5. As further noted in *Jinno* (in light of *Twombly*), "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). By intentionally ignoring such language, Next de-emphasizes the requirement under Rule 8 of the Federal Rules of Procedure requiring that factual allegations "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Jinno Int'l Co.,* 2013 WL 4780049 at *2 (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012, *cert denied*, 133 S.Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555)). *Jinno* is in accord with *Twombly*, and Next's attempt to avoid *Twombly's* pleading standard must fail.

Next's sophistry regarding the trade secret issues discussed in *Jinno* inaccurately portrays the basis of Viber's dismissal motion. Viber has not argued anywhere in its moving papers that Next is required to actually disclose its trade secrets in the Amended Complaint in order to satisfy its pleading requirements – Next's implication to the contrary is nothing more than a straw man. Rather, Viber's point is that *substantive allegations* are required to establish the existence of trade secrets and to properly plead that Viber has received and wrongfully used them. The speculation offered by Next throughout its Amended Complaint on these topics, including references to high-level sales pitches to Viber, simply is no substitute for detailed allegations required by *Twombly* and *Jinno*. Further, the omission of any mention in the Amended Complaint regarding alleged disclosure of technical or engineering specifications, development documentation, software code, or the like, or any statement that the supposed NxtGn App demonstration revealed any more than the capabilities of such Next product offering, confirm that Next's allegations are mere empty shells, with none of the meat required by *Twombly* and its progeny.

ii. Next Misstates The Case Law

Throughout its Opposition Memo, Next distorts the legal standards and case law applicable to the type of trade secret and business idea allegations it has asserted against Viber.

To begin with, Next's recitation of a basic building block of its claim, *i.e.*, what constitutes a trade secret under New York law, is flawed. In relying on *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3rd 955, 968 (2d Cir. 1997), Next neglects to mention that the alleged trade secret in question must be used in the *operation* of one's business – not in a product or service offered for sale. *See Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942 at *5 (S.D.N.Y. 2014), citing *LinkCo, Inc. v. Fujitu Ltd.*, 230 F. Supp. 2d 492, 499 (S.D.N.Y. 2002) (because a product cannot remain a trade secret once it is marketed, it cannot rise to the level of a trade secret as a matter of law). Next's own revised story line alleges that the trade secrets at issue are the "NxtGn App's capabilities". (Opposition Memo, p. 2), and Next makes no allegation that such capabilities or any related information are/is used to operate its business. As such, the NxtGn App's capabilities as referenced in the Amended Complaint do not qualify as protectable trade secrets under New York law. *Id.*

Next's attempts at citing to case law in order to excuse its failure to sufficiently identify the trade secrets at issue, or describe how Viber could possibly have access to them, all fall flat. Next relies on *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008) to support its argument that it has sufficiently described its alleged trade secrets. (Opposition Memo, p. 9). However, the facts in *Medtech* are clearly distinguishable. In *Medtech*, the plaintiff in its complaint had identified "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors" as the alleged trade secret in question. *Id.* at 789. Nowhere in Next's Amended Complaint is any such detailed

information alleged; nor is there any allegation that any such information was disclosed to or used by Viber. If anything, Next's citation to *Medtech* highlights that the Amended Complaint never alleges that Next disclosed to Viber any specifications, or any design, development or manufacturing documentation, or other details concerning allegedly proprietary Next methods, technology, hardware or software.

Next's reliance on *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576 (E.D.N.Y. 2007) is no more helpful to Next than *Medtech*. (Opposition Memo, p. 10) The court in *SD Protection* merely noted that trade-secret plaintiffs are not obligated to reveal their actual trade secrets in their complaints. *Id.* at 586. Again, the issue is not that Next must reveal its trade secrets in their complaint, but they must at least allege that they had exposed to Viber design details, or engineering documents, or some other specifics about its supposedly proprietary information. Yet, the Amended Complaint does nothing of the kind.

Next also incorrectly seeks to use this Court's decision in *Lindner v. Int'l Business Machines Corp.*, 2008 WL 2461934 (S.D.N.Y. 2008), to excuse the fact that it has alleged literally no basis for its conclusory statement, made upon information and belief, that Viber has made any use of information or materials from Next. (Opposition Memo, p. 11, n. 5) Next claims that it "sufficiently alleged that Viber misappropriated Plaintiffs' trade secrets by developing its own advanced teleconferencing technology like that found in the NxtGn App." Opposition Memo, p. 11). But nothing in *Lindner*, which involved the defendant's alleged discussions with third parties in connection with a Title VII action, gives Next the option of offering mere conjecture and speculation on such a vital point in this case. There is *no* statement in the Amended Complaint that comes close to stating that "Viber misappropriated Plaintiffs' trade secrets by developing its own advanced teleconferencing technology like that found in the

NxtGn App." In fact, Next does not even allege that Viber ever had access to any Next "advanced teleconferencing technology", as contained in the NxtGn App or otherwise.

Likewise, Next has mischaracterized the *Bear, Stearns Funding, Inc. v. Interface Groupe-Nevada, Inc.*, 361 F. Supp. 2d 283 (S.D.N.Y. 2005) case. Next attempts to stand the case on its head by arguing that because Viber and Next signed an NDA, the information disclosed must have constituted a trade secret. (Opposition Memo, p. 12).[2] According to Next, "[t]hat is exactly what Plaintiffs have alleged in the Amended Complaint." *Id.* But, Next provides no citation to the Amended Complaint to back up such a bold statement, plainly because there is none. Such a conclusory statement in the Opposition Memo cannot remedy the Amended Complaint's fatal lack of skin on the bones in this regard.

Next also fudges the applicable case law around the concept of novelty to argue that its supposed CEM idea is novel, and therefore actionable. Tellingly, Next provides literally no case law to contradict the clear precedent cited by Viber which requires the Court to take judicial notice of the publicly available U.S. patents and patent applications which Viber submitted in support of its motion. Such an omission amounts to an admission that no such cases exist. The one case that Next does cite, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007), does not have anything to do with a court's consideration of patent records in the context of a motion to dismiss. (Opposition Memo, p. 13, n. 6). Next has simply cited to the general rule on what courts consider when weighing a motion to dismiss.[3]

---

[2] The *Bear Stearns* case states that a separate claim for misappropriation of trade secret may exist if the "confidential information" under an NDA actually "constitute[s] a trade secret" -- not that the existence of an NDA shows the information is a trade secret. *See Bear Stearns Funding*, 361 F. Supp. 2d at 305.

[3] In so doing, Next omitted the following italicized words, which would allow for the proposition of taking judicial notice of patents: "*In general, our review is limited to* the facts as asserted

Nor does Next accurately recite what it refers to as "the contract theory of disclosure of ideas" in connection with their claim regarding the CEM idea in their discussion of *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000). (Opposition Memo, p. 14). Contrary to Next's contention that the CEM idea was novel to Viber under such contract theory, there is nothing alleged in the Amended Complaint that Next and Viber ever entered into any agreement with respect to the alleged CEM idea beyond the NDA. The absence of such contract or associated consideration to Next, in addition to the U.S. patents and published patent applications cited by Viber, show the opposite of what Next claims, *i.e.*, that there was no novelty to Viber in the CEM idea. In the absence of such novelty, the CEM idea claim must fail.

## CONCLUSION

For all the reasons set forth above, Viber respectfully requests that the Amended Complaint be dismissed in its entirety, with prejudice, and that Viber be awarded such other and further relief as the Court deems just and proper.

New York, New York
June 1, 2015

/s/ Jeffrey P. Weingart
Jeffrey P. Weingart
Jeffrey A. Kimmel
Susan M. Schlesinger
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3535
Email: jpw@msf-law.com
jak@msf-law.com
sms@msf-law.com

---

within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy,* 482 *at* 191.