UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(SULLIVAN/NETBURN)

Civil Action No. 14-CV-08190-RJS

Next Communications, Inc.,
a Delaware corporation, and
NxtGn, Inc., a Florida corporation,

Plaintiffs,

v.

Viber Media, Inc.,
a Luxembourg corporation

Defendant.

_____/

## PLAINTIFFS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTIONS

Menachem Mayberg
Seltzer Mayberg LLC
*Attorney for Plaintiff*
1200 Brickell Avenue, Ste. 680
Miami, FL 33131
Telephone: (305) 444-1565
Facsimile: (305) 444-1665

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................3

STATEMENT OF FACTS ....................................................................................................4

STANDARD OF REVIEW ...................................................................................................5

ARGUMENT.........................................................................................................................5

    Plaintiffs Have Clearly Identified The Materials Disclosed To Defendants That Constitute
    Plaintiffs' Trade Secrets .................................................................................................... 5

        The Trade Secret.......................................................................................................... 6

    Defendants Are Not Entitled To Summary Judgment As To Plaintiff's Breach Of Contract
    Because Propriety Information And Trade Secrets Have Been Disclosed Are Protected Under
    The NDA And Trade Secret Law.............................................................................. 9

    It Is A Question Of Material Fact Whether Any Valuable Information Was Disclosed
    Therefore Summary Judgement Is Inappropriate On The Unjust Enrichment Claims ............. 10

    CONCLUSION.......................................................................................................10

Next Communications, Inc. and NxtGN, Inc. ("Plaintiffs"), by through undersigned counsel, hereby files this response to Defendant, Viber Media, Inc.'s, Motion for Summary Judgment and in support of states as follows:

## INTRODUCTION

The ensuing litigation concerns the blatant taking of a novel and unique proprietary method of utilizing existing video technology to create the ability to connect hitherto previously unfeasible number of users, namely thousands of people simultaneously for multiconference purposes. Furthermore, the Plaintiff's proprietary innovative solutions provided for a whole new method of monetization, previously unable to be done, based upon the technical innovations created by Plaintiffs. Defendant, under the guise of exploring business options, initiated business talks, pushed and prodded to learn about the Plaintiffs' trade secrets, and once they obtained the secrets cut and ran. They then used the unlawful acquisition of information to sell to their company to the highest bidder.

The Defendant in this instant attempts to obfuscate the hard facts present in this case. The undisputed timeline alone establishes a strong indication of wrongdoing. The Defendant began talks with the Plaintiffs because Plaintiffs had something that intrigued Defendants. This intrigue led the Defendants to engage in a nearly two year long business discussion with Plaintiff with the parties entering into a Non-Disclosure Agreement. During this extended business talk period, the Defendants probed to find out the secrets of the Plaintiffs. Once the Plaintiff's CEO, Arik Meimoun, divulged the secret, the innovative method of multipoint teleconferencing with ability to monetize that was previously impossible, Defendants ceased all communication and immediately sold to a much larger company.

## STATEMENT OF FACTS

Plaintiffs' first contact with Defendants stretch back to May 2012, where the two parties made first contact at International Telecommunications Week Trade Show in Chicago, Illinois. Maimon Decl., ¶5; NEXT000115 Ex. B. During this initial encounter, a representative for Defendant, Arie Frenklakh introduced himself. Id. at ¶6. Several months later Mr. Frenklakh traveled to the offices in order to learn more about the capabilities of Plaintiffs' videoconferencing technology Id. at ¶9 Ex. B. On June 22, 2012, the Plaintiff and the Defendant entered into a Non-Disclosure and Confidentiality Agreement ("NDA"). D.E. 67, Amended Complaint 1.

By May of 2013 following the entrance of the NDA agreement, Mr. Maimon provided Mr. Frenklakh with a copy of two presentations titled "Technology offerings -NxtGn – 2012" and another titled "NxtGn HD Video Cloud Platform." Maimon Decl., ¶5 Ex. B. By May 2013 Mr. Miamon provided another presentations titled "NxtGn HD Video Cloud Platform (2013). Id. at ¶13. Eventually, the parties had meetings leading up to a June 13, 2013 presentations. Id. at ¶ 18. At the presentation confidential slides depicting the blueprints of the Plaintiffs' novel approach to video conferencing technology. Maimon Decl., ¶18-22; NEXT0030; Ex. B. Seemingly impressed with what Plaintiffs had to offer from the June 13, 2013 presentation, Defendant's agents began to inquire more about the unique video conferencing technology, with Mr. Maimon providing answers. Maimon Decl., ¶21 Ex. B. Once provided with all the information, Defendant stopped all communication with Plaintiffs, after learning about their unique technology, and sold their company to a much larger one. Id. at ¶30.

Discovery thus far consists of all emails that were in possession of Plaintiffs between Defendants and Plaintiffs, all power point slides provided to Defendants for the presentations, and deposition of Mr. De Prado, the Corporate representative for Plaintiffs.

## STANDARD OF REVIEW

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence put forth to support any issue of fact must be admissible. Fed. R. Civ. P. (c)(2). The facts that will properly preclude the entry of summary judgment are only facts that are deemed material to the suit at bar. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 212 (1986). It is the movement's burden to demonstrate that no factual dispute exists. Id. At the summary judgement stage, it is not the judge's function to weight the evidence, but to determine whether is a genuine issue for trial. Id. In other words, the question becomes, are there genuine factual issues that may be reasonably resolved in favor of either party. Id. Lastly, and most importantly, in deciding a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. Id.

## ARGUMENT

### Plaintiffs Have Clearly Identified The Materials Disclosed To Defendants That Constitute Plaintiffs' Trade Secrets

New York law requires that any Plaintiff bringing a claim for misappropriation of a trade secret must establish that "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Integrated Cash Mgmt. Servs. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990). What exactly constitutes a trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Id. Furthermore, a trade secret need not be merely a unique item in and of itself, but rather it "can exist in a combination of

characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." <u>Imperial Chem. Indus. Ltd. v. National Distillers and Chem. Corp.</u>, 342 F.2d 737, 742 (2d Cir. 1965). The general factors the courts should consider when determining whether a trade secret exists include: "(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. <u>Integrated Cash Mgmt. Servs.</u>, 920 F.2d at 173.

It is so far undisputed that all information produced within discovery thus far has been disclosed to Defendants at some point in time. D.E. 113, Defendant's Statement of Material Facts; Second Miamon Decl. ¶37 Ex. C. The contention revolves around whether the disclosures constitute a trade secret. There is evidence in the record that an undeniable trade secret has been disclosed in the current production, creating genuine issues of material fact that must be determined at the trial. Marks Decl. ¶11-12 Ex. D; Miamon Decl. Ex. B.

### The Trade Secret

The previously produced power point slides that the Plaintiffs gave to the Defendant demonstrate the trade secret. With but a brief expert explanation, the significance of the production becomes clear and the trade secret evident. In the Roger Marks declaration, he directs attention to a crucial slide in the Plaintiff's production. Marks Decl., ¶6 Ex. D; NEXT00030, Ex. B. Marks states, that this particular slide clearly demonstrates the "recipe" required to make the possibility of teleconferencing with upwards of 10,000 individuals

simultaneously, with the ability to monetize, a reality. In the Marks Declaration, the author emphasizes how the meticulous combination of the components put together, in a way described produced in the confidential slides create and constitutes the trade secret at issue. Marks Decl., ¶6; NEXT00030; Ex. B. The unique blueprint the slides revealed was the Plaintiffs' secret recipe that allowed the Defendant to create the special and unique system of teleconferencing for which it was searching and pressing Plaintiffs this, a concept so novel no one else has previously been capable of performing.

The Marks Declaration indicates how NEXT000030 is remarkable because of its combination and blending of unique, proprietary elements with common elements to create a novel system of teleconferencing. Marks Decl., ¶11 Ex.; NEXT00030; Ex. B. This unique and novel system was delivered, by the Plaintiffs, to the Defendant. This is the system that was so fervently sought after by the Defendant from the Plaintiffs and that was delivered because of contractual obligations in place preventing disclosure and misuse.

For example, generally, Video Architecture normally requires the use of Multipoint Control Unit ("MCU") to work effectively. The Plaintiff's blueprint ███████████████ ████████████████████████████████████████████████████ ████████████ In Addition, Marks noted that the very properties of the ███████ ██████████████████████████ depicted in the slides, allow for far larger capacity of users than previously allowable on these types of systems. Marks Decl., ¶12; NEXT00030; Ex. B. While each and every component is not unique, there are unique components that combine with common components produce a novel and proprietary system of teleconferencing capable of sustaining upwards of 10,000 users. As the Marks declaration indicates, it is not just the mixture of Plaintiffs' own unique elements mixed with the common elements that create this

novel system of teleconferencing, but it is also the specific way with which these elements are put together that comprise the trade secret.

The Marks declaration discusses an important element of the trade secret with regards to a novel and distinctive business model associated with the telecommunication system. A component of the Plaintiffs' trade secret is the payment avenues created. This information disclosed to Defendant was revolutionary as Mr. Marks notes,



Marks Decl. ¶17 Ex. D. This billing aspect was unique in that others in the industry merely provided a "bulk" method of billing that include raw hardware costs or annual per line access licenses. Id.

The entirety of the Plaintiffs' design was a feat so impressive that a titan in the field announced,

> [NxtGn and Next Communications] been successful in wholesale voice communications, in part due to in house technology paired with an off-the-shelf Cisco ASR 100 router performing Session Border Control functional. Packing a soft switch and an SBC that can handle 16k voice or HD video calls in half a rack...

Cisco Helps NxtGn and Telarix Deliver IPv6-enabled Video Solution, pg. 1, Ex. C.

Some of the components that make up the trade secret at issue are without a doubt common elements that are well known, however, the exact makeup of these 18 components are what makes this a true trade secret.; Marks Decl., ¶6; NEXT00026; Ex. B; NEXT00030, Ex. B. Much like butter, eggs, flour, sugar, and spices are common components, but only using the knowledge, or blueprint, of how to properly combine and bake them leads to a cake.

Interestingly, sister Courts in the New York Districts have opined that one does not have to pinpoint a trade secret, even if it is spread across many documents. Norbrook Labs. v. G.C. Hanford Mfg. Co., 297 F. Supp. 2d 463, 483 (N.D.N.Y 2003) citing 3M v. Pribyl, 259 F.3d 587, 595 (7th Cir. 2001). Here, the Plaintiffs did directly provide to the Defendant the unique system of teleconferencing that is the Plaintiffs' trade secrets.

This is the trade secret that the Defendant sought and the Plaintiffs provided. A trade secret so revolutionary, as soon as the Defendants procured it from Plaintiff, they cut ties and sold their company for hundreds of millions of dollars.

**Defendants Are Not Entitled To Summary Judgment As To Plaintiff's Breach Of Contract Because Propriety Information And Trade Secrets Have Been Disclosed Are Protected Under The NDA And Trade Secret Law**

The elements of breach of contract are: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach." RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC, 156 F. App'x 349, 350-51 (2d Cir. 2005).

It is undisputed that a valid Non-Disclosure and Confidentiality Agreement ("NDA") existed. D.E. 67, Amended Complaint. Furthermore, Defendant does not dispute the existence of the NDA and their subsequent entry of a contractual relationship. Instead, the Defendant mostly contend that any information given freely was not a trade secret or protectable under the agreement. The Defendant's arguments, and notably the attached declarations of Mr. Marks, Mr. Miamon, and Mr. Yurchenko, create a complete issue of fact as stated above.

**It Is A Question Of Material Fact Whether Any Valuable Information Was Disclosed Therefore Summary Judgement Is Inappropriate On The Unjust Enrichment Claims**

To state a claim for unjust enrichment under New York law, a plaintiff must plead that: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333, 339 (2d Cir. 2011) (citation omitted). However, "when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in . . . unjust enrichment . . . are generally precluded, unless based on a duty independent of the contract." Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2011). Nonetheless, a claim for unjust enrichment may still proceed "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." Id. (internal quotation marks omitted).

In the present case, as noted above, there is a secret that is of value that was transmitted to the Defendants at Plaintiffs expense. Again, the only issue is whether what was transmitted was a trade secret. Again, as noted above, the record demonstrates that there is a material factual dispute as to the caliber of the information transmitted, therefore summary judgment on this issue is inappropriate.

## CONCLUSION

In sum, there are genuine issues of material that necessitate this matter proceed to trial. Based on the evidence to date, pleadings, and undisputed facts there exist genuine issues of material fact that place this case rightfully in the providence of the jury.

**WHEREFORE** Plaintiffs respectfully request that his court deny Defendant's motion for summary judgement.

Respectfully Submitted,

Seltzer Mayberg LLC
*Attorneys for Plaintiffs*
1200 Brickell Avenue, Ste. 680
Miami, FL 33131
Telephone: (305) 444-1565
Facsimile: (305) 444-1665

By:  s/ Menachem M. Mayberg
    Menachem M. Mayberg
    Florida Bar No. 596744
    Email:menachem@smfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2017, the foregoing document was filed with the Clerk of the Court via CM/ECF.