UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Next Communications, Inc. and NxtGn, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Viber Media S.à r.l., <br><br> Defendant. | Civil No. 1:14-CV-8190 (RJS) |

## DEFENDANT VIBER MEDIA S.À R.L.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND SANCTIONS

Jeffrey P. Weingart
Jeffrey A. Kimmel
Susan M. Schlesinger
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3535
Email: jpw@msf-law.com
       jak@msf-law.com
       sms@msf-law.com

*Attorneys for Defendant*
*Viber Media S. à r.l.*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ............................................................................................................................. 3

I. The Marks Declaration Is Fatally Flawed And
Cannot Defeat Viber's Motion for Summary Judgment ..................................................... 3

II. Plaintiffs Have Offered No Admissible Evidence To Establish
That Information Contained In The Marks Declaration Was Ever
Communicated To Viber, Or That Any Verbal Communications
With Viber Were Designated As Proprietary Under The NDA ......................................... 5

III. The Mere Submission Of The Marks Declaration
Does Not Prevent The Granting of Summary Judgment .................................................... 8

IV. Plaintiffs' Response to Viber's Local Rule 56.1 Statement of Material Facts
Confirms The Speciousness of Plaintiffs' Claims .............................................................. 9

**CONCLUSION** ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Big Vision Private Ltd. v. E. I. DuOnt De Nemours & Co.*,
   1 F.Supp. 3d 224 (S.D.N.Y. 2014),
   *aff'd*, 610 F. App'x 69 (2d Cir. 2015) .................................................................................. 4, 8

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991)
   *cert. denied*, 502 U.S. 849 (1991) ............................................................................................ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................................................. 9

*Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F.Supp. 2d 340 (D.Del. 2012) ............................... 4

*Goenaga v. March of Dimes Birth Defects Foundation*,
   51 F.3d 14 (2d Cir. 1995) ......................................................................................................... 4

*Hayes v. New York City Department of Corrections*,
   84 F.3d 614 (2d Cir. 1996) ....................................................................................................... 6

*Heyman v. AR Winarick, Inc.*, 325 F.2d 584 (2d Cir. 1963) .......................................................... 3

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62 (2d Cir. 2001) ......................................................... 9

*In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501 (2d Cir. 2010) ....................... 8, 9

*Karimian v. Time Equities, Inc.*, 2001 WL 1900092 (S.D.N.Y. 2011) .......................................... 5

*Lake v. M.P.C. Trucking Inc.*, 718 Y.Y.S.2d 903 (3d Dep't 2001) ................................................ 5

*Perma Research & Development Co. v. Singer Co.*,
   410 F.2d 572 (2d Cir. 1969) ..................................................................................................... 6

*Raskin v. Watt Company*, 125 F.3d 55 (2d Cir. 1997) ................................................................... 8

*Sit-Up Ltd. v. IAC/InterActive Corp.*,
   2008 WL 463884 (S.D.N.Y. 2008) .................................................................................. 3, 5, 8

*TNS Media Research v. TRA Global*, 977 F.Supp. 281 (S.D.N.Y. 2013) ..................................... 8

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) .............................................................. 8

*Watt v. New York Botanical Garden*,
   2000 WL 193626 (S.D.N.Y. 2000) ........................................................................................... 9

**Other Authorities**

Local Rule 56.1 .................................................................................................................. 9

Fed. R. Civ. P. 37 ............................................................................................................. 10

Pursuant to Federal Rule of Civil Procedure 56, Defendant Viber Media S.à r.l. ("Viber") respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment and sanctions (the "Motion").

## PRELIMINARY STATEMENT

In their opposition to the Motion, Plaintiffs have merely continued their game of trade-secret whack-a-mole. In doing so, they have completely ignored Viber's opening papers[1] *and* their own prior sworn statements regarding what alleged trade secrets and proprietary information they purportedly disclosed to Viber. As a result, Plaintiffs have failed to raise any triable issues of fact, and Viber is therefore entitled to summary judgment.

Plaintiffs' Memorandum of Law in opposition to the Motion ("Plaintiffs' Memo") (Dkt. #140) and the Declaration of Roger B. Marks ("Marks Declaration") simply do not address the factual and legal points set forth in the Viber MOL or the Panwar Declaration – indeed, they do not even pretend to do so. It is as though Plaintiffs and their attorneys have never read Viber's Motion papers at all. Plaintiffs' Memo is nothing more than a regurgitation of the Marks Declaration; and the Marks Declaration mostly ignores the Panwar Declaration. Moreover, Plaintiffs fail to cite to any credible, admissible evidence sufficient to counter Viber's rendition of relevant facts. Nowhere, for example, do Plaintiffs even attempt to explain away their outright copying and attempted passing off of third-party inventions as their own before this Court. Instead, they repeatedly admit -- as Viber has contended all along -- that their alleged trade secrets and proprietary information are indeed based on publicly available information.

---

[1] Viber's opening papers included (i) Viber's Memorandum of Law in Support of Motion for Summary Judgment and Sanctions ("Viber MOL") (Dkt. #112); (ii) the Declaration of Shivendra S. Panwar dated October 10, 2016 ("Panwar Declaration" or "Panwar Decl.") (Dkt. #115); (iii) Viber's Local Rule 56.1 Statement of Material Facts ("Viber SOF") (Dkt. #113); and (iv) the Declaration of Jeffrey Weingart dated October 10, 2016 ("Weingart Decl.") (Dkt. #114).

[5727-123/5228166/1]    1

In essence, Plaintiffs' entire opposition is based on exaggerated, inconclusive extrapolations offered by Marks to the effect that he "envisions" or "presumes" that the Next Materials "suggest" certain capabilities that may be "possible". These "perceptions" or "understandings", laced with uncertainty and hedging, go well beyond anything actually contained in, or revealed by, the Next Materials, as confirmed by Dr. Panwar in his reply declaration.[2]

Consequently, this is not a case where experts are at loggerheads over disputed technical contentions that raise triable issues of fact and could stand in the way of summary judgment. On the contrary, Marks fails to even mention at least two-thirds of the points raised in the Yurchenko Declaration, and when he does, he artificially expands single Yurchenko sentences to encompass broad, encyclopedic concepts nowhere to be found in the Next Materials. This over-extrapolation phenomenon is a function of Marks' after-the-fact, creative-writing methodology, rather than any fact-based, technical analyses as to what alleged trade secrets were actually revealed to Viber in the Next Materials.

Thus, Marks does not materially contradict Dr. Panwar's conclusions, opting instead to make up new interpretations of Next's bare-bone slide decks which Yurchenko (who has been noticeably absent), Maimon and DePrado never derived and which, until now, Next never identified as having been communicated to Viber. Having failed to comply with their Court-ordered Phase I discovery obligations by timely identifying what new information the Next Materials and any verbal communications to Viber may have allegedly comprised and conveyed with specificity, Plaintiffs now seek to start the disclosure and cross-examination process all over again, including with brand-new revelations from Marks and Maimon. If what Marks now claims

---

[2] References to Dr. Panwar's reply declaration dated February 15, 2017 are hereinafter referenced as "Panwar Reply".

the Next Materials reveal was actually accurate, Plaintiffs would no doubt have detailed such alleged disclosures during Phase I. That Plaintiffs are now resorting to Marks completely undercuts their claim that his new extrapolations are what the Next Materials revealed to Viber in the first place.

Accordingly, having had their original trade-secret renditions debunked by Dr. Panwar as well-known and publicly available, Plaintiffs now attempt to shift to other substitute trade-secret theories. This latest shifting of Plaintiffs' trade secret positions, in itself, fatally undermines the credibility of both the old version and the new version of just what Plaintiffs' claim as their allegedly disclosed and misappropriated intellectual property. Plaintiffs have thus failed to create a hint of a triable issue of fact, and this Court should therefore grant Viber summary judgment.

## ARGUMENT

### PLAINTIFFS HAVE FAILED TO RAISE ANY TRIABLE ISSUES OF FACT, AND VIBER IS THEREFORE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

**I.  The Marks Declaration Is Fatally Flawed And Cannot Defeat Viber's Motion For Summary Judgment**

The law in this Circuit is crystal clear when it comes to trade secrets: A plaintiff has the burden of establishing that it disclosed its alleged trade secret to the defendant with particularity. Absent such requisite specificity, an alleged disclosure is insufficient to sustain a trade secret misappropriation claim. *See Heyman v. AR Winarick, Inc.*, 325 F.2d 584, 590 (2d Cir. 1963) (finding that a mere reference to an item without more particularity "did not amount to the divulging of a trade secret"). The rationale behind this Black Letter rule is that "[s]pecificity is required *at the moment of divulging* so that the party to whom the secret is revealed understands the contours of the secret information and does not inadvertently or purposefully transgress its boundaries." *Sit-up Ltd. v. IAC/Interactive Corp.*, 2008 WL 463884 *11 (S.D.N.Y. 2008)

(Emphasis added); *see also Big Vision Private Limited v. E I DuPont De Nemours*, 1 F.Supp3d 224, 258-9 (S.D.N.Y. 2014) (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012) (a plaintiff must identify its trade secrets "'with a reasonable degree of precision and specificity'" that is "'particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade'").

Plaintiffs' opposition papers only magnify their failure to meet their burden of establishing an issue of fact as to whether they ever disclosed a trade secret or proprietary information to Viber.³ As described in the Panwar Reply, Marks' allusions to what he claims are the limited, non-public information allegedly revealed to Viber via the Next Materials are based on "presumptions" and "possibilities", with no showing that the Next Materials themselves contain such information with particularity. (Panwar Reply, ¶¶ 6-10). As Dr. Panwar concludes, the Marks Declaration is replete with extrapolations offered by Marks, couched in terms of what he "understands," "envisions" or "presumes" based on the Next Materials and on certain capabilities that such materials "suggest" may be "possible". (*Id.* at ¶¶ 6, 10, 11, 13). Dr. Panwar notes that Marks' after-the-fact and present day "presumptions" or "understandings" go far beyond anything actually contained in, or revealed to Viber by, the Next Materials at the time of such alleged disclosure. *Id.* at ¶¶ 8, 11. Dr. Panwar concludes that "[i]f anything, Marks' need to provide extensive explanations for what is supposedly taught by the Next Materials support my conclusion that those materials, standing by themselves, do not teach anything new." *Id.* at ¶11.⁴

---

³ The particularity rule regarding trade secret claims is consistent with this Circuit's view of summary judgment generally -- namely, that a "motion [for summary judgment] 'will not be defeated merely ... on the basis of conjecture or surmise.'" *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991)).

⁴ The evasiveness of the Marks Declaration brings to mind the strange turn of events in which Plaintiffs' original counsel in this case informed the Court on November 21, 2017 – the first

Accordingly, the conclusions in the Marks Declaration allegedly drawn from the Next Materials fail to show that any trade secrets or proprietary information were actually communicated to Viber at the time of disclosure to Viber. *See Sit-up Ltd.* 2008 WL 463884 at *11 ("If a particular piece of information, or a formula, is not entitled to trade secret protection because it is "so vague and indefinite" at the time it is divulged, then it cannot be granted protection as a trade secret by a court during litigation...."). Having failed to make such a showing, Plaintiffs have no valid basis for opposing summary judgment.[5]

## II. Plaintiffs Have Offered No Admissible Evidence To Establish That Information Contained In The Marks Declaration Was Ever Communicated To Viber, Or That Any Verbal Communications With Viber Were Designated As Proprietary Under The NDA

Although Arik Maimon has now submitted several declarations to the Court, neither he nor DePrado has ever confirmed that (i) the extrapolated information contained in the Marks Declaration was ever communicated to Viber, or (ii) that the verbal communications which Maimon and DePrado claim that Maimon and others at Next had with Viber were designated as

---

extended response date supposedly resulting from Yurchenko's alleged unavailability -- that they were withdrawing from the case due to "irreconcilable differences". Given the unusual timing of such notification on the very evening that Plaintiffs' opposition was due, the Court may wish to draw an adverse inference that Plaintiffs' prior counsel was not satisfied that Plaintiffs' current opposition positions satisfied applicable Rule 11 obligations. *See e.g., Karimian v. Time Equities, Inc.*, 2011 WL 1900092 at *2, 4 (S.D.N.Y. 2011) (discussing "'irreconcilable differences" which require an attorney to withdraw including "with respect to the proper course to be pursued in [the] litigation'") (quoting *Lake v. M.P.C. Trucking Inc.*, 718 N.Y.S.2d 903, 904 (3d Dep't 2001)).

[5] Marks' contention that Dr. Panwar failed to recognize or did not appreciate critical aspects of the Next Materials are merely a function of Marks imagining "critical" details in those materials that, based on his own hedged descriptions, simply do not exist – not because of any alleged shortcomings in Dr. Panwar's understanding. *See* Panwar Reply at ¶15. To the extent information was actually revealed to Viber in the Next Materials, Dr. Panwar previously addressed such disclosures in his initial declaration as "...not being new and as having been known and disclosed in the prior art." *Id.* Plaintiffs' continued inability to identify with particularity any trade secrets or proprietary information allegedly disclosed to Viber necessarily means that Viber is entitled to summary judgment.

Proprietary Information as required under the Parties' NDA. Mr. Maimon's latest declaration submitted in opposition to Viber's Motion, dated February 6, 2017 ("Maimon 2-17 Declaration") (*see* Plaintiffs' Memo., Exh. C), is a slightly revised version of the Maimon Declaration dated June 29, 2016 ("Maimon 6-16 Declaration") (*see* Plaintiffs' Memo, Exh. B), which is discussed at length in Viber's opening MOL. (*See* Viber MOL at pp. 5, 6, 9, 10 and 29). Nowhere in the Maimon 2-17 Declaration does he even reference the Marks Declaration or any statements set forth therein (and vice-versa). The closest he comes to identifying any information allegedly disclosed to Viber is in Paragraph 24 – one of five completely new paragraphs (¶¶ 10, 24, 35, 36, and 37) not found in the Maimon 6-16 Declaration. In Paragraph 24, Maimon alleges, for the first time in the more than two years that this action has been pending, that in "several calls" with Arie Frenklakh, Maimon purportedly disclosed to Frenklakh ████████████

████████████████████████████████████████

████████████████████████████

████████ On June 30, 2013, I sent a follow up email to Mr. Frenklakh. I described the technology in the slide presentations and the trade secret utilized." (Maimon 2-17 Decl., ¶24).[6]

There are several threshold issues that militate against the Court viewing Maimon's latest vague and unsupported revelations as an obstacle to summary judgment.[7] First, the addition to

---

[6] Tellingly, Maimon fails to say when the alleged conversations referenced in Paragraph 24 took place, but he is sure to state the date of the alleged follow-up email, *i.e.*, June 30, 2013. This is no coincidence, as the term of the NDA expired on June 22, 2013. This means that any communications, either verbal or written, that took place after June 22, 2013 were not protected under the parties' NDA. Plaintiffs fail to address this point, choosing instead to artfully draft around the issue, but do not provide a copy of the June 30th e-mail. (Plaintiffs' Memo, Exh. E).

[7] That Maimon's two Declarations differ does not create issues of fact that would preclude a finding of summary judgment. *See e.g. Hayes v. New York City Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996) (quoting *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578

Maimon's declaration testimony in Paragraph 24 and other new allegations added to the 6-16 Declaration comes nearly eight months after the close of Court-ordered Phase I discovery, during which Plaintiffs were to disclose all trade secrets and proprietary information allegedly disclosed to Viber. Among other things, as a result of this tardy disclosure, Viber did not have an opportunity to cross-examine Plaintiffs' Rule 30(b)(6) witness DePrado during Phase I regarding such alleged disclosures. (Maimon did not make himself available to be deposed, instead sending DePrado, who had no contact with Viber.) Finally, the Paragraph 24 allegations do not disclose any trade secrets or proprietary information. Rather, they comprise general, high-level statements containing no particulars or specifics. For example, it is impossible to tell from Maimon's statements what codecs, architecture or topology he claims to be referencing. As such, it is impossible for Viber to know the boundaries between public and allegedly private information, and to defend against claims arising from such purported disclosures.[8] Due to the foregoing reasons alone, this Court should disregard such new Maimon allegations in the course of deciding Viber's Motion.

The new allegations in Paragraph 24 and other new Maimon sworn statements once again reflect how Plaintiffs' description of their alleged trade secrets has continued to morph in this case. Maimon's new disclosures highlight Plaintiffs' disrespect for this Court and the Phase I procedure which was established specifically to avoid forcing Viber to engage in an ongoing game of trade-secret whack-a-mole. Standing alone, Plaintiffs' ongoing gamesmanship in this regard is enough

---

(2d Cir. 1969) (explaining that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial").

[8] Dr. Panwar already addressed the substance of Paragraph 24 of the Maimon 2-17 Declaration in the Panwar Declaration. Specifically, Dr. Panwar indicates that the codecs are not described with particularity and the codecs and other elements Maimon recites were not novel at the time frame allegedly disclosed to Viber in view of the prior patents Dr. Panwar cites. (*See* Panwar Decl., at ¶¶ 8, 11-12, 14).

to mandate entry of summary judgment in Viber's favor. *See TNS Media Research v. TRA Global*, 977 F. Supp. 281, 313-314 (S.D.N.Y. 2013), quoting *Sit-Up*, 2008 WL 463884, at *9.

Finally, neither DePrado nor Maimon, despite having ample opportunity, ever aver that alleged verbal communications that Maimon and others (not DePrado) had with Viber representatives were expressly designated as proprietary information as required to afford protection under the NDA. In a last-ditch effort to explain away that fatal omission, Maimon states in the new Paragraph 35 of the 2-17 Maimon Declaration that "Everything was produced, including trade secret information, to Viber was protected information. I either personally provided it in person, phone call, electronically, or allowed a member of my staff to release the information". (2-17 Maimon Declaration at ¶35). The only conclusion to be drawn from such a vague and evasive statement is that Maimon never actually designated any of his or Plaintiffs' alleged verbal communications with Viber as proprietary information under the NDA. As Viber noted in its opening MOL, such a conclusory statement by Maimon, which ignores the terms of the NDA Plaintiffs wish to enforce, has been rejected by this District because "such understanding of the NDA would, if adopted render its confidentiality restriction a nullity." *Big Vision Private, Ltd.*, 1 F. Supp. 3d at 254-55. This Court should follow such precedent and adopt an inference that none of Plaintiffs' alleged verbal communications with Viber were protected under the NDA.

### III. The Mere Submission Of The Marks Declaration Does Not Prevent The Granting of Summary Judgment

The mere submission of the Marks Declaration by Plaintiffs does not hinder the Court's ability to grant summary judgment in favor of Viber. A purported expert submission such as the Marks Declaration "...is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501, 512 (2d Cir. 2010)

("summary judgment is not *per se* precluded because there are conflicting experts"). Such "no-talisman" approach by this Court is especially fitting given the above-referenced fatal flaws in the Marks Declaration. *See e.g. In re Omnicom Group,* 597 F.3d at 512 (explaining that "[s]ummary judgment is appropriate here because [the expert] testimony does not suffice to draw the requisite causal connection between the information ... and the fraud alleged in the complaint"). Similarly, as Marks is not able to connect his current, high-level descriptions of the Next Materials to what Viber may or may not have reasonably understood given the state of technology back in 2012 or 2013, any purported disagreement(s) which he may have with Dr. Panwar are actually beside the point in the context of Viber's Motion and should be disregarded.[9]

### IV. Plaintiffs' Response To Viber's Local Rule 56.1 Statement of Material Facts Confirms The Speciousness Of Plaintiffs' Claims

In their response to Viber's Rule 56.1 Statement of Material Facts ("Next SOF Response"), Plaintiffs fail to properly cite to admissible evidence controverting Viber's factual assertions, as required under Local Rule 56.1(d). This Court has interpreted Local Rule 56.1 to provide that "...'where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73-74 (2d. Cir. 2001) (quoting *Watt v. New York Botanical Garden,* 2000 WL 193626 at *1, n. 1 (S.D.N.Y. 2000)). Plaintiffs indicate that they dispute some of the facts asserted by Viber. However, there are numerous examples of applicable evidentiary citations provided by Plaintiffs which do not support Plaintiffs' controverting statements. For example, Plaintiffs' response to the Internet URLs at which the Range Networks Manual, which was misappropriated

---

[9] In the event that the Court is inclined to give any weight to the Marks Declaration despite the issues raised herein, Viber respectfully requests the opportunity to move to strike the Marks Declaration under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

by Plaintiffs, is that such URLs are "not accessible". This statement is demonstrably false.[10] Other examples of such blatantly unsupported controverting statements (or statements that are simply not responsive or not in dispute) include Plaintiffs' responses to Paragraphs 29, 32, 34, 46, 50, 51, 54, and 55. Such statements, unsupported by the record citations invoked by Plaintiffs, should be disregarded by this Court. To the extent that Plaintiffs cite to the Marks Declaration or the 2-17 Maimon Declaration, such citations do not raise triable issues of fact in light of the fatal flaws in these submissions as discussed above.

## CONCLUSION

In light of the foregoing and based on its opening submissions to this Court, Viber respectfully requests that the Court issue an Order in Viber's favor (i) granting Viber's Motion for Summary Judgment in all respects; (ii) awarding Viber its attorneys' fees and costs incurred in defending against this Action pursuant to the fee-shifting provision of the NDA; (iii) granting Viber sanctions pursuant to Fed.R.Civ.P. 37; and (iv) granting Viber such other and further relief as the Court deems just and proper.

Dated: New York, New York  
February 16, 2017

Respectfully submitted,

/s/ Jeffrey P. Weingart  
Jeffrey P. Weingart  
Jeffrey A. Kimmel  
Susan M. Schlesinger  
**MEISTER SEELIG & FEIN LLP**  
125 Park Avenue, 7th Floor  
New York, New York 10017  
Telephone: (212) 655-3500  
Facsimile: (212) 655-3535

---

[10] Such URLs were accessible on February 16, 2017. *See* Declaration of Jeffrey P. Weingart dated February 16, 2017, Exh. A, Part 2. (*See* Next SOF Response, ¶ 63).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 16, 2017, a copy of the foregoing Defendant Viber Media S.à r.l.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment and Sanctions; along with Declaration of Shivendra S. Panwar in Support of Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and; Declaration of Jeffrey P. Weingart in Support of Viber Media S.à r.l.'s Reply Memorandum of Law with accompanying exhibit were filed electronically using the Court's electronic filing system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: February 16, 2017  /s/ Susan M. Schlesinger
Susan M. Schlesinger